**TRADERS & GENERAL INS. CO. v. DAVIS et al.**

No. 3750.

Court of Civil Appeals of Texas. Beaumont.

Feb. 5, 1941.

Rehearing Denied Feb. 12, 1941.

Writ of Error Dismissed March 19, 1941.

See 149 S.W.2d 88.

A. L. Lowery, of Nacogdoches, Lightfoot, Robertson & Gano, of Fort Worth, for appellant.

Collins, Williams & Garrison and Sumner Williams, Jr., all of Lufkin, for appellees.

O'QUINN, Justice.

This is an appeal from a judgment of the district court of Nacogdoches County, Texas, in a compensation insurance suit. Fred Pellom was the employee, Garrison Lumber Company the employer, and appellant, Traders & General Insurance Company, the compensation insurance carrier. Fred Pellom, while in the course of his employment as an employee of the Garrison Lumber Company, on October 31, 1938, received an injury for which he claimed compensation. Appellant admitted its liability and made several payments amounting to $35, and then made an agreement with Pellom for settlement of his claim, and paid him the sum of $125 additional in full settlement of his claim, which settlement was reduced to writing and approved by the Industrial Accident Board of Texas on December 24, 1938, and notice of its approving same went out January 6, 1939.

On May 24, 1939, Fred Pellom died. On November 27, 1939, his mother, Lillie Davis, appellee, filed her claim for compensation with the Industrial Accident Board, based upon the death of her son, Fred Pellom. The Board made its final ruling and award on said claim, denying compensation, on January 18, 1940. Claimant duly gave notice that she would not abide said ruling, and duly filed this suit to set same aside

and to recover compensation, as under Section 16 of Article 8306, Revised Statutes of Texas, 1925.

Appellant answered by plea in abatement to the effect that the suit was an attempted appeal from an award of the Industrial Accident Board of Texas, and that the appeal was based upon a claim filed by appellee, Lillie Davis for herself and Willie Mae Davis, Dennis Pellom, and Almos Willie Davis, alleged to be beneficiaries of deceased Fred Pellom, which claim was filed before said Board on November 27, 1939, and which claim for all of said alleged beneficiaries was by the Board denied on January 18, 1940; that thereafter said Lillie Davis gave notice of appeal from said award, and then filed this suit for herself alone, joined by her husband; that the other alleged beneficiaries were not made parties to the suit, neither as plaintiffs nor as defendants; that in appeal from an award of the Board all parties thereto must be made parties to the suit, and this not having been done there was a nonjoinder of necessary parties wherefore the suit should be dismissed.

█ The court overruled the plea in abatement, against which ruling appellant assigns error. The assignment is overruled. The facts are: the beneficiaries named with Mrs. Davis in the claim before the Board were Willie Mae Davis, a daughter of Lillie Davis, grown and married, Dennis Pellom, son of Lillie Davis, grown and married, and Almos Willie Davis, small minor son of Lillie Davis. On the date that Lillie Davis filed her amended petition in the instant suit, March 4, 1940, Willie Mae Davis, joined by her husband, Sam Davis, and Dennis Pellom, by written instrument filed in the case, waived any claim they had or might have in or to any portion of the compensation that was subject to the claim for compensation because of the death of Fred Pellom, to Lillie Davis, the mother, and assigned all of their rights and claim to her. And on said date, March 4, 1940, Almos Willie Davis, the aforesaid minor, by his father, William Davis as next friend, by leave of the court intervened in the case and claimed compensation by reason of the death of Fred Pellom, alleging that he was a dependent of said Fred Pellom, his half brother. The hearing revealed that said minor, Almos Willie Davis, was not a dependent of deceased Fred Pellom, there being no evidence raising such issue, but to the con-

trary all the evidence showed that he was not such dependent. The other alleged claimants, Willie Mae Davis and Dennis Pellom, having appeared in the cause and waived any claim to which they might be entitled by reason of the death of Fred Pellom, and having assigned such claim, if any, to appellee, Lillie Davis, their mother, took them out of the case, and so the plea of abatement was without foundation, and hence properly overruled.

The case was tried to a jury upon special issues upon their answers to which judgment was rendered in favor of appellee, Lillie Davis, setting aside the award of the Industrial Accident Board, and for compensation at the rate of $7 per week for 330 weeks from and after May 24, 1939, for the death of her son, Fred Pellom; and judgment against the intervenor, Almos Willie Davis, because the undisputed evidence showed him not to be a dependent of the deceased Fred Pellom, to any extent; and against Willie Mae Davis, sister of Fred Pellom, and against Dennis Pellom, brother of said Fred Pellom, deceased, the uncontradicted evidence showing them not to be dependents of said Fred Pellom (by their pleadings they had each waived any right they might have had to compensation, and had assigned same to their mother, Lillie Davis, and so were not entitled to recover). Motion for a new trial was overruled, and we have the case for review.

The first assignment complains that the court erred in refusing appellant's motion for an instructed verdict. The assignment is overruled. The contention is that no causal connection was shown between the injury received by deceased and his subsequent death. Special issue No. 1, submitted by the court, was: "Do you find from a preponderance of the evidence that the injury sustained by Fred Pellom to his right leg as a result of having been struck by the falling lumber on October 31, 1938, was a producing cause of his death?" The jury answered "Yes." We think the evidence abundantly supports this finding.

█ That deceased Fred Pellom was an employee of the Garrison Lumber Company on October 31, 1938, and that on said date, while in course of his employment, he received an injury, and that he was covered as an employee of said lumber company by compensation insurance carried by appellant, that he received $2 per day and worked 6 days per week, and that he died May 24,

1939, are undisputed facts. Claim for compensation was filed by Lillie Davis, his mother, before the Industrial Accident Board on November 27, 1939. This was only 3 days more than 6 months after the death of deceased. Section 4a of Article 8307, Revised Civil Statutes of Texas, provides that claims for compensation shall be filed with the Industrial Accident Board of Texas within six months after the happening of the event giving rise to the right to make claim, and further provides: "For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

Appellee plead that she had a meritorious case, and had good cause for not filing her said claim sooner than it was actually filed, to wit: "Thereafter, as hereinabove alleged, the said Fred Pellom died on or about May 24, 1939, from and as a natural result of the said injuries so sustained by him, and his mother, Lillie Davis, plaintiff herein, made and filed a claim for compensation for the death of said Fred Pellom with the Industrial Accident Board of the State of Texas on or before November 27, 1939. Plaintiff has a meritorious case and also had good cause for not filing said claim sooner than it was actually filed with the Industrial Accident Board, on or before November 27, 1939, in that within a few weeks after the death of the said Fred Pellom she requested her son-in-law, Sam Davis, to go to Nacogdoches and consult an attorney at law and ascertain whether or not she was entitled to any compensation for the death of her said son. Within a few days after she made such request, her son-in-law reported to her that he had consulted an attorney and had been advised by such attorney that no further compensation could be recovered for the death of the said Fred Pellom because of the fact that the deceased had settled and compromise(d) his claim for disability benefits under the compensation law during his lifetime. Plaintiff was wholly ignorant of the provisions of the Workmen's Compensation Law and of her rights under such circumstances and relied implicitly upon such report and information and believed that it was a correct interpretation of the law; she did not learn that the information was inaccurate and incorrect and that she was nevertheless entitled to compensation for the death of her said son, regardless of any settlement for his own disability that may have been executed by the deceased before his death, until on or about November 25, 1939. Immediately after and on the same date she learned that she was nevertheless entitled to recover compensation for her son's death, she executed a claim for compensation for such death and on that day mailed it to the Industrial Accident Board where it was received and filed on or before November 27, 1939. The failure of the plaintiff, Lillie Davis, to file her claim for compensation for the death of the said Fred Pellom sooner than it was filed was caused and brought about by her reliance on and her belief in the truth of the information and advice brought to her by her son-in-law that she had no right to compensation for the death of her son, as above shown."

Appellant's second and third propositions complain, in effect, that the court erred in permitting appellee, Lillie Davis, and her witness, Sam Davis (son-in-law), to testify to the matters by her plead as good cause for not filing her claim with the Industrial Accident Board within 6 months after the death of her son, Fred Pellom. They each testified fully sustaining her said allegations. The testimony was objected to because hearsay, secondary, out of the presence of defendant, and was proof only of "ignorance of law," and that "there was no evidence, legal or illegal, to support the verdict and answers of the jury to those issues" (Nos. 2, 3, 4, 5, and 6) and the judgment entered on such verdict was not supported by any evidence.

On the question of good cause, the court submitted the following special issues, answered as indicated:

"Special Issue No. 2.

"Do you find from a preponderance of the evidence that the plaintiff, Lillie Davis, before the expiration of six months after the death of Fred Pellom, requested Sam Davis to inquire of an attorney at law whether she had a right to compensation insurance of the death of Fred Pellom?"

Answer: "Yes."

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the said Sam Davis, after having been so requested by the plaintiff, Lillie Davis, reported to the plaintiff, within six months after the death of the said Fred Pellom, that he had been advised by an attorney that she had no right to compensation insurance for the death of the said

Fred Pellom since he had settled and released his claim for compensation?"

Answer: "Yes."

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that the plaintiff, Lillie Davis, believed such information, until on or about November 25, 1939, that she did not possess any right to compensation insurance for the death of the said Fred Pellom?"

Answer: "Yes."

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that her belief in the truth of such information was the cause of Lillie Davis having delayed the filing of her claim for compensation for a period of three days beyond the expiration of six months after the death of the said Fred Pellom?"

Answer: "Yes."

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that the plaintiff, Lillie Davis, in delaying the filing of her claim for compensation until November 27, 1939, in reliance on this information and belief, acted with the same degree of diligence that would have been exercised by a person of ordinary prudence in the exercise of ordinary care, so situated?"

Answer: "Yes."

The evidence supported all these findings of fact.

We think that the record amply shows that appellee had a meritorious cause. Now, was the evidence subject to the objection that it was hearsay. Under the general rule of hearsay, it probably was. However, we have concluded that this testimony was not inadmissible under the general hearsay rule. The evidence was not offered to prove that appellee was entitled to compensation, but was offered only to prove that she had good cause for not filing her claim for compensation earlier than she did—to prove good faith in her delay in not filing sooner. As in other cases where claim of good cause in delaying filing where the delay was because attending or examining doctors had told the injured party that the injury was not serious and would soon pass and the injured party would in a short time be able to resume his work, the injured employee is permitted to testify to what he had been told to show good faith and good cause for not filing his claim sooner. The hearsay rule does not exclude such evidence.

■ Furthermore, we think that appellant is not entitled to urge delay in filing the claim as a defense. Article 8307b, Vernon's Ann.Civ.St. provides that "In the trial of any case appealed to the court from the board the following, if plead, shall be presumed to be true as plead and have been done and filed in legal time and manner, unless denied by verified pleadings: * * (2) Claim for compensation * * *." This fact (claim for compensation) was alleged by appellee in her first amended original petition (on which the case was tried). The defendant's answer containing the special denial of this averment was not verified as required by law. Counsel for appellant verified the special denial in his affidavit stating "that the matters set forth in paragraph 7 above are, to the best of his knowledge, information and belief, true." The verification was not sufficient and left the plea without legal support, First National Bank v. Jaggers, Tex.Civ.App., 67 S.W.2d 924, and so was an unsworn plea. In the absence of a denial by properly verified pleading, under the circumstances, concludes the issue by a legal presumption that the allegation of such fact (filing claim for compensation as required by law) as made by appellee in her petition was true. Bedner v. Federal Underwriters Exchange, Tex.Civ. App., 133 S.W.2d 214, writ dismissed, correct judgment.

■ Appellant's third proposition, in which it attacks appellee's alleged good cause for not filing sooner her claim for compensation, and says: "the only good cause attempted to be alleged, or shown, was ignorance of the law, and this was shown by illegal and hearsay evidence, and even this hearsay and illegal evidence shows a total lack of diligence to ascertain the facts, and there was no good cause alleged or proven, and the court erred in refusing to instruct the jury to return a verdict for the defendant, and erred in submitting to the jury special issues Nos. 2, 3, 4, 5, and 6 on this illegal and hearsay evidence, and there was no evidence, legal or illegal, to support the verdict and answers of the jury to those issues, and the judgment entered on such verdict is not supported by any evidence, and the court erred in entering such judgment and in refusing to set said verdict and judgment aside and grant defendant a new trial on its motion therefor."

This proposition does not refer to any assignment or assignments of error to which it relates or upon which it is based. It is

just a combination of matters, and hence multifarious because it embraces various supposed errors—ignorance of the law, illegal evidence, lack of diligence, no good cause alleged or proven, refusal to instruct a verdict, errors in submitting five different special issues, no evidence to support verdict of the jury, judgment without support in the evidence, error in refusing to set aside the verdict and judgment, and error in refusing a new trial. The second proposition, relating to hearsay testimony, is linked with this third proposition, the whole briefed together, on the theory, so stated in the brief, that they relate to the one subject, "good cause." We think there is a complete ignoring of the rule that an assignment must relate to a definite error, must not be argumentative, and must specifically point out the matter complained. 3 Tex.Jur. Sec. 597, page 855. The assignment should not be considered, but we shall briefly discuss same.

■■ We think that appellant's contention that "ignorance of the law" was the ground for "good cause" relied upon by appellee, is not well taken. It was rather ignorance of what application of the law to the facts the court would make. She was seeking knowledge of what the court would probably do in applying the law to the facts. That question (what application of the law to the facts the court would make) seems to be the stumbling block in the path of lawyer and layman many times. We think that appellee was perturbed over the fact of the settlement of his claim for damages made by her son—would that bar a recovery by her for his death. That was the feature of the case passed upon by the lawyer at Nacogdoches to whom she sent her son-in-law for advice, and he sent her word that she could not recover because her son had settled his claim with the insurance company. Her belief in the truth of this information caused her to delay filing her claim until she was advised differently by another lawyer, when she immediately filed her claim with the Industrial Accident Board. Even then she filed her claim only 3 days late of the 6 months. There being no doubt of her right to recover under the evidence, it must be said that her claim was meritorious. The Board did not refuse the claim because filed too late, but, as stated in its award, because it was thought that no causal connection was shown between the injury and the death of the deceased. So far as the time of filing was concerned, the Board waived strict compliance with the rule. Appellant insists that the delay was because of a mistake of law—ignorance of the law—and therefore could not support a plea (good cause) for equitable relief. But we think the mistake was more analogous to a mistake of fact than one of law. While the general rule is well settled that a court will not relieve against a mistake of law, it is also generally held that such rule is confined to mistake of the general rules of law, and has no application to the mistake of persons as to their own private legal rights and interests. The right of appellee, Mrs. Davis, to recover compensation for the death of her son, was, of course, her private right, and was a matter of fact, and was, too, the result of the law granting such right. That she had the right to recover, she believed, but as to whether, under the peculiar facts, she could successfully assert that right was a different question—one of at least mixed law and fact, and it was here that she halted and sought information. Columbian Nat. Fire Ins. Co. v. Dixie Co-Op. Mail Order House, Tex.Com.App., 276 S.W. 219; Cooper County Bank v. Bank of Bunceton, 221 Mo.App. 814, 288 S.W. 95, 99; McIntyre v. Casey, Mo.Sup., 182 S.W. 966. To permit appellant to defeat its liability under the facts of this case would be to confer upon it a benefit which in good conscience it cannot retain.

■ The fourth proposition urges that the court's definition of "producing cause" was error. The definition given was: "By the term 'Producing Cause' as used in this charge is meant a cause which, in a natural and continuous sequence, by itself, or in connection with another cause or causes, produces a death, and but for which the death would not have occurred." The proposition is overruled. Texas Employers Ins. Ass'n v. Watkins, Tex.Civ.App., 135 S.W.2d 296; Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026.

■■ Appellant's fifth, sixth, seventh, eighth, ninth, tenth, and eleventh propositions, in effect, complain that the court erred in rendering judgment in favor of Lillie Davis, mother of deceased Fred Pellom, for the whole of the compensation granted, because it insists the pleading and evidence showed that there were other beneficiaries, to wit, Willie Mae Davis, a sister of deceased, and Dennis Pellom, a brother of deceased, and Almos Willie Davis, a minor half brother of deceased, who were legal beneficiaries and as such entitled to a portion of the compensation claim on account of the death of Fred Pellom. The propositions

914

are without merit. Willie Mae Davis, joined by her husband, William Davis, and Dennis Pellom, brother grown and married, duly entered their appearance in the trial, and in writing each waived any claim they respectively had in the claimed compensation, and assigned their right, if any they had, to their mother, Lillie Davis, to said compensation. Almos Willie Davis, the minor half brother of Fred Pellom, deceased, intervened by his father and next friend, William Davis, and made claim as a beneficiary and dependent of deceased Fred Pellom, to a portion of the compensation claimed because of the death of said Fred Pellom. The undisputed evidence showed that neither Willie Mae Davis, nor Dennis Pellom, nor the minor, Almos Willie Davis, was ever at any time a dependent of Fred Pellom, deceased, or that he contributed to their maintenance, and this being true, the said Willie Mae Davis and Dennis Pellom, having duly waived their claim, and duly assigned same to their mother, Lillie Davis (as they legally could do, Texas Employers Ins. Ass'n v. Sloan, Tex.Civ.App., 36 S.W.2d 319; Traders & General Ins. Co. v. Boysen, Tex.Civ.App., 123 S.W.2d 1016), there was no question of fact relative to their said claims to be submitted to the jury. Undisputed facts do not have to be submitted to a jury for its findings. Fidelity & Casualty Co. v. Branton, Tex.Civ.App., 70 S.W.2d 780.

In her motion for judgment, appellee, Lillie Davis, joined by her husband, William Davis, moved the court that she be permitted to reopen the case for further evidence, alleging that by inadvertence, in the main trial, she had failed to show that her former husband, Tom Pellom, the father of deceased Fred Pellom, was at the time of the death of Fred Pellom, dead, though same was duly alleged by her. The motion was granted and proof duly made that Tom Pellom, father of Fred Pellom, was dead—that he died on April 13, 1918. This was not denied. Appellant objected to the reopening of the case for further evidence on the ground that the case was tried to a jury, that both parties had rested, the court had charged the jury, and the jury had returned its verdict and had been discharged, that the evidence could not be introduced after the trial before the jury had ended, and before the judge only. Appellant assigns error against the reopening of the case and the admission of the evidence. The assignment is overruled. In 41 Tex.Jur. Section 136, pp. 897, 898, it is said: "And on an issue tried

by the court after a jury has disposed by verdict of all issues specifically submitted, the court may receive evidence to supply an omission." No error is shown, but if so, it is immaterial. Tom Pellom, father of Fred Pellom, deceased, was shown to have died on April 13, 1918, more than twenty years before his son died. There was no effort to show that he had not died. The evidence of death was by noninterested witnesses as well as by a death certificate in all respects regular. The courts are not required to do a foolish thing. If it were to be held reversible error to have reopened the case for the reception of this evidence, the court on another trial would not have to submit the issue of Tom Pellom's death, for the evidence being undisputed a jury finding would not be required, so a reversal of the judgment because of the question here involved would be foolish resulting only in delay and additional costs—no injury was done appellant. The assignment is overruled.

We overrule appellant's assignments that the court erred in overruling its general demurrer, and plea in abatement.

No reversible error appearing, the judgment is affirmed.