## FEDERAL UNDERWRITERS EXCHANGE
### v. HINKLE et al.
### No. 14678.

Court of Civil Appeals of Texas.
Fort Worth.
March 23, 1945.

Rehearing Denied April 20, 1945.

John T. Gano, of Fort Worth, and Milburn E. Nutt, of Wichita Falls, for appellant.

Napier & Napier, of Wichita Falls, for appellee.

McDONALD, Chief Justice.

This is a workmen's compensation suit. Frank Arnell Hinkle, the employee, was killed on January 24, 1940. He was survived by four brothers and two sisters, all adults. They filed claim with the Industrial Accident Board, and appealed from the ruling of the Board by filing suit in one of the district courts of Wichita County. Upon the first trial judgment was rendered denying recovery to all of the brothers and one of the sisters, on the ground that they were not dependents of the deceased employee. The four brothers and the one sister to whom recovery was denied did not appeal, and judgment became final as to them. The other sister, Lucile Hinkle, appealed from the judgment rendered in her favor because she was awarded only one-sixth of the compensation payable. We reversed the judgment and remanded the cause, holding that she was entitled to all of the compensation or none. Hinkle v. Federal Underwriters Exchange, Tex.Civ.App., 152 S.W.2d 387, writ of error refused for want of merit. We left the judgment undisturbed in so far as it denied a recovery to the brothers and the other sister. Upon a second trial Lucile Hinkle recovered judgment, and the insurer appealed. We reversed the judgment and remanded the cause, for the reasons shown in our opinion. Federal Underwriters Exchange v. Hinkle, Tex.Civ.App., 167 S.W.2d 307, writ of error refused for want of merit.

Upon a favorable verdict of the jury Lucile Hinkle again recovered judgment, and the case is now before us for the third time. During the pendency of the suit Lucile Hinkle married Callie L. Gillman, who became a party to the suit, but since the suit is still carried under the name of Lucile Hinkle we shall, to avoid confusion, refer to her by that name.

The first four points of error of appellant, the insurer, are considered together in its brief, but we shall treat them separately.

Under the first point the question is raised whether there is any evidence to show dependency within the meaning of the statute. Art. 8306, Sec. 8a, Revised Civil Statutes. This same question was raised by the insurer on the former appeals. We held that a jury issue was raised. The evidence is substantially the same in the record now before us, and we remain of the opinion that our views in this respect were correct.

Under the second point of error it is argued that the verdict of the jury in re-

gard to dependency is so against the great weight and preponderance of the evidence that we should reverse the judgment and remand the case for a new trial.

■ "The mere fact that a verdict is against the preponderance of the evidence will not authorize the Court of Civil Appeals to set it aside, if there is evidence to support it. The appellate court will set aside the verdict and findings of the jury in cases where they are so against such a preponderance of the evidence as to be clearly wrong, show passion or prejudice, or in such obvious conflict with the justice of the case as to render them unconscionable." 3 Tex.Jur. 1097.

■ Appellee was a single woman until more than two years after the death of her brother. He was older than appellee. She had worked mainly as a housekeeper at weekly wages of $3.50 or $4.00 per week, plus her board and room. Beginning in 1937, and continuing to shortly before his death, the deceased contributed to her about $10.00 per month. She said that she used the money to pay for necessities. She said that she used the money she earned to buy clothes and things that she had to have, and that she used the money her brother gave to her for the same purposes. The last time he gave her any money was in November, 1939, when, appellee testified, he gave money to pay her fare back to Tennessee and some "extra." He died on January 24, 1940. Appellant makes much of the fact that he did not give her money during the months of December and January, relying on the rule, stated in the decisions hereafter cited, that dependency must be determined by the facts that exist at the date of the death of the employee. We do not consider that the failure to give her any money during the two months in question is enough to defeat appellee's claim of dependency, in view of her testimony just mentioned.

■ Appellant urges us to examine the evidence shown in the statement of facts filed in the former appeal, on the ground that the evidence of appellee there is to the effect that the money her brother gave her in November, 1939, was only enough to pay her fare back to Tennessee. Obviously, it seems to us, we cannot resort to a record of testimony taken on a former trial to determine whether error has been committed on the later trial. The case was tried before a different judge and to a different jury. The testimony taken on the former trial might in a proper case be used for impeachment purposes, or as admissions against interest, but, to be used for such purposes, would have to be introduced in evidence in the later trial. Otherwise, the trial judge, who did not sit in the former trial, would not have the former testimony before him in passing upon the motion for instructed verdict, nor would the jury have such testimony before it in arriving at a verdict. We have been cited to no authority for such practice, and it seems elemental to us that we must test the action of the trial court and the verdict of the jury by the evidence introduced in the later trial.

■ Appellant relies especially on the late decision of the Supreme Court in Federal Underwriters Exchange v. Hall, 182 S.W.2d 703, and also the decision in Texas Employers Ins. Ass'n v. Arnold, 127 Tex. 245, 92 S.W.2d 1019. The facts in the case before us are quite different from those in the two cases just cited. In the present case the claimant was employed at a meager wage. She testified that she used the money her brother gave her to pay for necessities, and it seems to us that she might well have done so. The following statement of the rule is applicable here:

"It is an accepted rule in compensation cases that partial dependency may exist although the alleged dependent could have subsisted without the labor of the employé, or is not without the necessities of life. The test is: Was the alleged beneficiary relying in whole or in part upon the labors of the deceased for support? Corpus Juris, Workmen's Compensation Acts, p. 61, par. 52. The court charged the jury, in effect, that defendants in error must show that they were dependent, in whole or in part, upon the labors of deceased for support. Support is a very flexible term and includes something more than the bare necessities of life. It includes also the ordinary comforts and conveniences which are reasonably appropriate to the parties' station in life—such as were actually being enjoyed by them at the time of and prior to their son's death. Rosholt v. Mehus, 3 N.D. 513, 57 N.W. 783, 23 L.R.A. 239; Owens v. State, 6 Okl.Cr. 110, 116 P. 345, 36 L.R.A.,N.S., 633, Ann.Cas. 1913B, 1218. If the parents were dependent, in whole or in part, upon the labors or contributions of the deceased son for such support, they were, we think, depend-

ents within the meaning of the law." Lumbermen's Reciprocal Ass'n v. Warner, Tex. Com.App., 245 S.W. 664, 665.

In the Hall case the employee was a minor who was living with his older sister and her husband. The sister claimed compensation as a dependent. At the time of his death, the sister and her husband were both employed, she at a salary of $90 per month and her husband at a salary of $140 per month. Her younger brother was paying her about $4 per week, and was living at her home. She said that the $4 per week was applied on the boy's laundry, and his work clothes or extra laundry, and to apply on the wages of the girl who helped with the housework. We refer to the opinion for a fuller statement of the facts. In the Arnold case the claimant, a man forty-two years of age, lived in a distant state. During several years when he was disabled from an injury his father assisted him substantially. But for some time before the death of the father the son had been making a comfortable living. The following is the summary of the facts contained in the opinion in the case [127 Tex. 245, 92 S.W.2d 1022]:

"Briefly summarized, these are the facts, as disclosed by the claimant's own testimony: At the date of the death of the employee the claimant was 42 years of age, the owner of a good-sized restaurant, the owner of property of sufficient value to support a loan thereon of $3,000, the owner of a Chrysler automobile, and, in addition, was drawing a salary of $150 per month, besides expenses, as a salesman. At that time he evidently contemplated remarriage, for he was married in Elmira, N. Y., a few days after his father's death.

"These facts, to our minds, lead to but one conclusion, and that is that claimant was not a dependent of his father, who lived hundreds of miles away and earned about $140 per month by laboring 10 hours per day, 5½ days per week."

Appellant also cites Rodriguez v. Texas Employers Ins. Ass'n, Tex.Civ.App., 35 S.W.2d 510, but in that case the jury found that the claimant was not dependent on the employee. The question before the court on appeal was whether the evidence showed dependency as a matter of law—an entirely different question from that before us.

Three juries have now found in favor of appellee on the dependency question. We think that the evidence was sufficient to support the verdict.

Under the third point of error complaint is made of the action of the court in overruling special exceptions to the allegations of appellee's petition with respect to dependency. We overruled this same contention upon the second appeal of the case, and adhere to our former views.

The fourth point of error complains of the manner of submission of the case to the jury, and of the refusal of the court to submit the specially requested issues and charges of the defendant. The point is not briefed, and is therefore waived. Appellant does not point out the nature of its complaint against the charge, nor does it point out the issues and charges which it thinks should have been given.

The fifth point presents a question raised on the first appeal of the case. Appellant argues that since appellee was one of six brothers and sisters, she should in any event have been allowed only one-sixth of the amount of compensation payable on account of the death of her brother. We overruled this contention on the first appeal, and adhere to our views there expressed.

The other sister was Blanche Davis. In answer to a special issue, the jury found that she was not a dependent of the deceased employee. Under the sixth point appellant argues that appellee should have no more than half the compensation involved, because, to quote from its point, " * * * the undisputed evidence herein establishes that Blanche Davis was just as dependent on the deceased as was Lucile H. Hinkle Gillman, if not more so, and if the said claimant Gillman is legally such a dependent then her said sister, Blanche Davis, is also a dependent as a matter of law, and the said Gillman cannot recover herein the one-half interest belonging to the said Davis."

As above stated, Blanche Davis was named as a plaintiff in the original petition. She was denied a recovery on the first trial, she did not appeal, and the judgment against her was left undisturbed. The jury found that Blanche Davis was not a dependent. She testified that her brother had given her money, but that she was not dependent on him for support, and that she was employed and was earning $16 per week at the time of her brother's death. She said she was "never dependent upon him at all." She was asked whether she had any expectations of receiving con-

tributions from him in the future, and answered in the negative. Being asked a similar question at another time, she said that she had expectations of receiving contributions from her brother, but that they were remote expectations, and that she "had no idea as to what extent to expect." The testimony mentioned amply supports the jury finding, which destroys the premise upon which appellant's proposition rests. We do not undertake to say whether appellant's proposition would be sound if the evidence had showed without dispute that Blanche Davis was a dependent, although we do say that we have been cited to no authority which supports it. We have considered only the testimony which tends to support the verdict, as we are required to do when it is claimed that the undisputed evidence is against the verdict.

■■■ The substance of the contention made under the seventh point of error is that appellee did not file with the Industrial Accident Board a claim sufficient to confer jurisdiction.

In the first place, we think that appellant failed to file a sufficient denial under oath to put this question in issue. Appellant's first amended original answer, upon which it went to trial, was filed on March 14, 1942. We shall therefore test it by the rule of procedure then in force and effect. Rule 93, section (n), Texas Rules of Civil Procedure, as it then read, provided that it should be presumed, if plead, that claim for compensation was filed in legal time and manner unless denied by verified pleadings. Appellant's answer was verified by its attorney upon information and belief. Verification upon information and belief was insufficient to satisfy the requirements of the rule, and therefore the denial was inadequate to raise the issue in question. Traders & General Ins. Co. v. Hill, Tex.Civ.App., 161 S.W.2d 1101, writ of error refused for want of merit. We observe that in Rule 93, section (n), as amended subsequent to the filing of appellant's said answer, it is provided that denial of the matters set forth in sections (1) and (7) of said section (n) may be made on information and belief, the clear implication from this being that the other matters set forth in section (n) are not sufficiently denied if the verification is upon information and belief.

■■■ But even if there had been a properly verified denial, the claim was entirely sufficient. The form of the claim is that which we have often seen used. In the body of the claim is found the clause "Give names and P. O. Address of the Beneficiaries of the deceased (stating the kinship of each such Beneficiary to deceased)." Immediately following are found the names of the four brothers and the two sisters, including the name of appellee. Another paragraph of the claim reads as follows: "This claim for compensation, with respect to such injury and because of the death of the deceased, is made in behalf of and for each and all of the legal beneficiaries of the deceased, as well as by and for the undersigned, he herein acting for himself and such legal Beneficiaries." The claim is signed, "W. R. Hinkle, Executor."

Appellant attaches importance to the addition of the word "executor" after the signature of W. R. Hinkle. This is of no importance. The claim states that it is made in behalf of the other beneficiaries, as well as for the undersigned. It is immaterial that he added the word "executor" to his name, because still he was purporting to act for the others. One of the beneficiaries may file a claim on behalf of the others. The point is clearly without merit.

■■■ Under the eighth point of error complaint is made of the finding of the jury as to the average weekly wages of the deceased. The jury found, upon sufficient evidence, that the deceased did not work in his employment for practically three hundred days during the year immediately preceding the injury, and that there was not another employee of the same class who worked practically three hundred days during the same period in the same or similar employment. The jury found $32 as an average weekly wage that would be fair and just to all parties in the case.

A reasonable interpretation of the testimony of one of the partners in the firm by whom the deceased was employed is that the deceased's regular week's work consisted of 56 hours, and that he was paid 60 cents per hour for 42 hours per week, and time and a half, or 90 cents, per hour for all over that. This evidence was sufficient to support the finding of $32 as a wage rate that would be fair and just. Appellant contends that an examination of the record of evidence on a former appeal will reveal that the deceased actually was paid an average of about $25 per week. In line with what we have said earlier in this opinion, the evidence in question was

not before the jury whose verdict is now under attack, and they were of course in duty bound to consider only the evidence which they had before them. The evidence as to what had actually been paid the deceased seems to have been in the form of a statement. Appellant tendered it in evidence on the present trial, and the trial court excluded it. Appellant has no point of error here complaining of its exclusion, nor does the record in the present case show what the statement of wages paid actually showed, there being no bill of exceptions or other record of it. We overrule the point of error.

■ The ninth point of error charges that the amount of the judgment is excessive. The employee was killed on January 24, 1940. The judgment before us was rendered on October 10, 1944. The judgment is for the accrued compensation payments of $19.20 per week, with interest thereon from the date each fell due to the date of the judgment, and for the payment of compensation by the week at the same rate for 114 weeks and 5 days afterwards. The sum found by the court as the amount of the accrued payments and interest was $5,529.51. Appellant in its brief asserted that the correct amount was $4,864.90, and that the judgment was excessive in the amount of $664.61. Appellant's counsel, however, in oral argument upon submission of the case, stated that the computations in his brief were erroneous, and further stated, in effect, that he would leave it to the court to calculate the amount for which judgment should have been rendered. As may be seen, this put upon this court the burden of computing interest on some 245 installments of compensation in order to determine whether the judgment was excessive. The admission of appellant's counsel in oral argument that the calculations in his brief were inaccurate had the effect of leaving his brief with only a point of error in it touching upon the matter, and with no statement or argument in support of it. Therefore, we would be justified in treating the point as waived. However, appellee also, in her brief, undertook to calculate the amount due on the accrued installments of compensation, plus interest, arriving at a total of $5,386.66. In view of the concession by appellee that the judgment is excessive, we have ourselves undertaken to calculate the amount due, at the time of judgment, on the accrued installments, plus interest,

and are of opinion that the correct amount of the accrued installments, plus interest, is $5,390.87.

■ Appellant also contends that the trial court was in error in ordering the payment of compensation for 114 weeks and 5 days in the future, the contention being that the correct figure was 114 weeks only. We find no assignment in the motion for new trial supporting this contention, nor does the point of error in the brief support the contention. We therefore overrule it.

The judgment of the trial court is reformed so as to allow recovery in the sum of $5,390.87 for the installments accrued to the date of the judgment in the court below, and otherwise is left undisturbed. As so reformed, the judgment is affirmed.

Twenty-five dollars of the costs of appeal are taxed against appellee, and all other costs, on the present appeal and in the court below, are taxed against appellant.