FEDERAL UNDERWRITERS EXCHANGE v. CHRISTINE A. HALL ET AL.

No. A-144. Decided October 11, 1944.
(182 S. W., 2d Series, 703.)

*Mohrle & Oster,* of Dallas, *Lightfoot, Robertson & Gano,* of Fort Worth, *Dan Moody* and *J. B. Robertson,* of Austin, for petitioners.

The evidence being insufficient to establish the claimants in this case as dependents of the deceased, but does establish that they did pay for his funeral expenses in the sum of $250.00, they should only be allowed a recovery for that amount, and should be denied any recovery for compensation insurance. Mills v. Texas Emp. Ins. Assn., 253 S. W. 321; Federal Underwriters Exch. v. Hinkle, 167 S. W. (2d) 307; Consolidated Underwriters v. Free, 253 S. W. 941.

*Todd, Crowley & Gambill,* of Fort Worth, *Strasburger, Price,*

*Holland, Kelton & Miller,* of Dallas, for respondents.

The evidence in this case showed that claimant was a devoted sister to her younger brother, the deceased; that shortly after the death of her brother, she was stricken ill; that her husband had been drafted as a private in the army and that the brother had not only been contributing to his sister's aid and in assisting in the household duties, but in all probability would have continued to contribute more substantially if he had not been killed, all of which contribute to the fact that she was dependent upon him for help. Chicago, Wilmington & Franklin Coal Co. v. Industrial Commission, 303 Ill. 540, 135 N. E. 784; Jones v. Texas Emp. Ins. Assn., 268 S. W. 1004; Southern Surety Co. v. Hibbs, 221 S. W. 303; Fuller v. Inman, 10 Geo. App., 680, 74 S. E. 287, 291.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

This is a workmen's compensation insurance case in which Mrs. Christine Hall, the compensation claimant, joined by her husband, Howard M. Hall, was awarded by the trial court, upon jury findings, a lump sum judgment against Federal Underwriters Exchange, petitioner here. The trial court's judgment was affirmed. 179 S. W. (2d) 519.

The basis of Mrs. Hall's recovery was that she was a dependent compensation beneficiary of her deceased brother, John Anderson. The facts are without dispute. In fact Mrs. Hall was the sole witness as to the facts relating to her dependency. John Anderson *at the date of his death* (July 14, 1942) was a minor just past eighteen years of age. Mrs. Hall some two years prior thereto had married Howard M. Hall and John, who had theretofore lived with his sister, lived at the time of his death with Mr. and Mrs. Hall. It appears from Mrs. Hall's testi-

mony that her mother died in 1930 and her father in 1934; that in 1931 she, at 19 years of age, began (following her graduation from high school and the taking of a business course) working in a gainful occupation; that when her father died she had been employed for about three years at salaries ranging from $60.00 to $120.00 per month; that when she married in 1940 she had been working about nine years; that she, John and her two older brothers continued to live together at Lubbock until December, 1936, when she moved to Fort Worth, taking John with her; that the older brothers did not go to Fort Worth, but contributed "gifts, clothes and that sort of things," toward John's upkeep, especially during his high school period. He in turn always helped about the home; that the only time (prior to Mrs. Hall's marriage) that she was not gainfully employed after she became a wage earner, was a few months in 1938, on account of illness; that immediately following her marriage she did not work for about three months, but on January 1, 1941, resumed her business occupation and was not unemployed again until about the latter part of August, 1942, when she was ill for a time shortly after the death (July 14, 1942) of her brother; that January 1, 1943, after recovery from her illness, a nervous illness, which had recurred, she again resumed her work and at the time of the trial was an employee of the Grand Prairie Clinic at a salary of $125.00 per month; that Mr. Hall in May, 1942, was working at $140.00 per month, and at the time of John's death was receiving the salary stated, Mrs. Hall $90.00 per month and her brother (he graduated in high school about a month before his decease) about $20.00 per week; that Mr. Hall at the time of John's death was subject to being taken into military service. *He was inducted into the army about five and one-half months after John died.* The deceased's two brothers, Gene and Charles Milburn, 23 and 29 years of age, respectively, had independent businesses of their own at the time of John's death. They, in the manner referred to below, joined Mrs. Hall the following day in a statement made by her in which she said, among other things:

"John was 18 years old on June 26, 1942. He was single and never married. He lived with me since he was about 6 years old and up to the time of his death. However, his two brothers, Gene and Charles Milburn Anderson, also contributed to his support on up to about June 1, 1942, at which time he was graduated from Grand Prairie High school. He got a job soon after he graduated from high school but I kept on giving him room and board on up to the time of his death. All of the money he made he used for his own personal use and benefit.

Both brothers signed a statement underneath Mrs. Hall's to the effect that they had read her statement and that "all of the facts and statements contained therein' were "true and correct" to their "best knowledge and belief." Mrs. Hall's husband signed both statements as a witness.

Mrs. Hall testified also that John treated her as if she were his mother; that up to the time of his graduation he gave her from time to time small and irregular amounts; that she did not know how much such amounts were before he began work for American Body Company, but not more than $4.00 a week; that he would pay for gasoline when he used the car, and bought "little odds and ends of things" for her, and gifts, and things of that sort, and "sometimes paid for his own laundry, if he had special laundry or cleaning that he wanted done, and paid his own life insurance premiums, and that sort of thing." His insurance was made payable to her. It seems never to have been agreed that John pay his sister any specified amount but after graduation and he had begun working for American Body Company at $19 or $20.00 a week and had more cleaning than he had had before, he began giving her about $4.00 a week with regularity. When Mrs. Hall was asked how she would use what he paid her weekly she replied, "to apply on his laundry, his work clothes or extra laundry, * * * and apply on the help, the girl we had there at the house to help us."

Mrs. Hall said that from the time John was a small boy up until the time of his death she took care of him and he helped her with the work about the home, and that during her married life she and her husband took care of him and he continued to help her.

"Q: And you furnished him a home and kept him in school and paid the expenses, didn't you?

"A: We didn't pay all his expenses; he paid part of them himself.

"Q: You gave him spending money at intervals?

"A: If he didn't have it, although those times were seldom; after he was a junior in highschool he nearly always had his own money."

Mrs. Hall stated upon the trial concerning the statement made by her and witnessed by her husband the day after John's death, quoted from above, ("all of the money he made he used it for his own personal use and benefit") that when she made it she was on the verge of collapse, and did not in-

tend to imply that he didn't contribute to the household; but she made no denial of the facts contained in the statement, or of any of the other testimony given by her by deposition, or otherwise.

It was stipulated by the parties that if it was established that deceased died as a result of injuries received in the course of his employment Mrs. Hall, in view of the payment by her of the funeral bill, she should be awarded $250.00 for the funeral benefit.

Upon conclusion of the evidence petitioner moved the court to instruct a verdict in her favor for that amount. Petitioner stated in its motion that under the undisputed evidence Mrs. Hall was not dependent under the terms of the Workmen's Compensation Act and that her own testimony showed she and her husband were not, under the facts, dependent upon the deceased for support; and that on the other hand Mrs. Hall's testimony disclosed as a matter of undisputed fact that she and her husband substantially aided in supporting the deceased.

The trial court overruled the motion and in his charge submitted a special issue inquiring whether at the time of John Anderson's death Mrs. Hall was dependent upon him as the term "dependent" was defined in the charge. The jury having answered the inquiry affirmatively, petitioner moved for judgment non obstante in its favor. The court overruled the motion and entered judgment in favor of Mr. and Mrs. Hall for a lump sum recovery. The view under which judgment was rendered in her favor was that under the dependency provisions of section 8a of article 8306, Vernon's Annotated Civil Statutes (Workmen's Compensation Act), the facts supported by jury's finding.

■ Writ of error was granted under the view that the Court of Civil Appeals erred in affirming the trial court's judgment for a sum in excess of $250.00, and in not sustaining petitioner's point to the effect that the evidence disclosed that Mrs. Hall was not a dependent of John Anderson within the meaning of section 8a of the Compensation Act. We adhere to this view. Sec. 8a, Art. 8306; Texas Employers Insurance Association v. Arnold, 127 Texas 245, 92 S. W. (2d) 1019; Rodriguez v. Texas Employers Insurance Association, 35 S. W. (2d) 510; Schneider's Workmen's Compensation Law, Vol. 2, Sec. 367, p. 1196.

Deleting some parts of the provisions of section 8a, supra, not presently involved, the pertinent provisions are as follows:

"The compensation provided for * * * shall be for the sole and exclusive benefit of the surviving husband * * * and of the wife * * * and of the minor children, parents, and stepmother without regard to the question of dependency, dependent grandparents *dependent children and dependent brothers and sisters of the deceased employee; * * * provided the right in such beneficiary *** to recover compensation for death be determined by the facts that exist at the date of the death of the deceased and that said right be a complete, absolute and vested one. * * *"* (Emphasis supplied.)

It will be noted from the quoted provisions that the compensation provided for in the first category of beneficiaries is for the sole and exclusive benefit of survivors classified as husbands, wives, minor children, parents and stepmothers; and that the right of a claimant of any class of that category to recover compensation is "without regard to the question of dependency."

It will be noted also that the right to compensation of another category of claimants—grandparents, children, and brothers and sisters, is conditional; and that whether such claimant is entitled to compensation is not "without regard to the question of dependency," and must be determined by the facts that exist *at the date of the death of the employee,"* relating to the dependency of a claimant under the relationships specified in this category.

The claim of Mrs. Hall, she being a sister of the deceased, falls under the "dependent brothers and sisters of the deceased" classification of relationships; and the question to be decided is therefore whether *at the date of the death of John Anderson* the then existing facts showed that Mrs. Hall was a dependent of his within the meaning of section 8a, relating to the second category of claims.

The question for decision in the Arnold case cited above was whether the claimant was a "dependent" of his father *"on the date of the latter's death, * * *."* The claim there involved arose under the "dependent children" classification, a relationship specified in the same category of claims under which the present claim arose. There was no question but that at a time preceding the father's death, had his death then occurred, a fact question of dependency would have been presented. The father died on October 9, 1928. The son in 1921 sustained an injury to his knee. He testified that his father sent him between 1921 and 1928 from $5.00 to $100.00 at a time, contributing to him during that

period $4,000.00 or more; that he depended upon his father for these and other contributions and could not have got along without them. Clearly had the death of his father occurred during the period of 1921 to 1928, the question of dependency would have been presented as a fact question. Judge Hickman speaking for the Court, said, after pointing out the provisions of section 8a of article 8306 of the Compensation Act:

" * * *. J. P. Arnold (the father) was not survived by a wife, minor child, parent, or stepmother. He was survived by brothers, sisters, adult children and grandchildren; but none of them, except defendant in error, claims to have been in any sense dependent upon him *at the time of his death.* The sole question for decision is: Was the claimant a dependent of his father on the date of the latter's death, *October 9, 1928,* We shall make such statement of the facts as will throw light upon *that one question.*" (Italics ours.)

In the statement of facts throwing light upon the question it is pointed out that the claimant's (the son's) wife died in 1921, leaving him two daughters, aged 8 and 10 years; that a short time thereafter claimant sustained the knee injury above referred to; that as a result thereof he was for several years unable to support himself and family and "for a few years after the death of claimant's wife, his father made generous contributions to him." The following is then stated to make clear what the precise question, under the facts and the provisions of section 8a, was:

"* * *. Whether they (the contributions) were made under such circumstances as would constitute him a dependent of his father *during that period* we need not determine. Our question is whether the relation of dependency existed in 1928, *particularly on October 9th of that year.*" (Italics ours.)

The opinion, following the foregoing statement of the question presented, set out the claimant's own testimony touching same, and concluded with this statement:

"Much has been written on the question of who is a dependent under Workmen's Compensation Laws. * * * In determining questions of dependency, courts as a rule merely outline the elements thereof without undertaking to formulate exact definitions, but the idea inheres in the term itself that the relation must be such that one relies *for support, in part at least,* upon the aid of another. In Rock Island Bridge & Iron Works v. Industrial Commission, 287 Ill. 648, 122 N. E. 830, 831, this definition is given: 'In law a dependent is one who is sustained by

another, or relies *for support* upon the aid of another; who looks to another *for support, and relies on another for reasonable necessaries consistent with the dependent's position in life.'* * * * We well recognize that the question of dependency is generally one of fact to be determined by the trier of facts, and not by this court; but where, as here there is no dispute as to the facts, and they lead to a definite conclusion, *it is our duty to announce that conclusion as a matter of law.* * * * These facts to our minds, lead to but one conclusion, and that is that claimant was not a dependent of his father, who lived hundreds of miles away and earned about $140.00 per month by laboring 10 hours per day, 5½ days per week." (Italics ours.)

Schneider's Workmen's Compensation Law (Vol. a, sec. 367, p. 1196) carries in the body of the text on the subject of "Dependents" a statement of what constitutes dependency, which accords with the law of this state as stated above; and points out in effect that dependency is not established by contributions not *necessary for support*. A long list of cases is cited in support of its holding as to what constitutes dependency, the first of which is the Rock Island Bridge & Iron Works case cited and quoted from by this court in the Arnold case.

Did Mrs. Hall, under the facts as they existed *at the time of John's death*, rely upon, or look to, him for support, that is, *support as such*, to aid in procuring herself necessaries to enable her to live consistent with her position in life?

The facts are uncontroverted and lead definitely to the conclusion that she did not. It appears from the testimony stated above that at the time of John's death Mrs. Hall and her husband had acquired a home in which they had a substantial equity. Both were employed at salaries which were enabling them to get ahead. It appears from the testimony that in January, 1942, Mr. Hall lost the position he was then holding. John, as Mrs. Hall testified, offered "to contribute what money he had and all that he had coming to him if it were necessary, and there was times it was necessary"; but that was before John's death. It was even prior to his graduation. By the first of May Mr. Hall had procured another and better position, and he and Mrs. Hall were employed as usual when John died. Mrs. Hall said she "had been told" her illness of 1938 would recur. It had not recurred at the time of John's death four years later. She was ill again shortly following John's death but by the first of January, 1943, following his death in July of that year she had recovered and was employed as usual. It appears from her testi-

mony that she lost time only twice from illness during a period of eleven years of following her business avocations and that Mr. Hall was unemployed only once after their marriage, and that was temporarily in the spring of 1942. She and Mr. Hall were able at the time of John's death to provide him board and a place in their home to enable him to live with them as he had with Mrs. Hall before she and Mr. Hall were married. He showed his brotherly affection, and his appreciation, by helping about the home during such time as he could outside of the fifty-four hours per week he was working; and by giving his sister about $4.00 a week out of his nineteen or twenty dollars a week salary. The facts lead definitely to the conclusion that Mrs. Hall was not relying upon her minor brother at the time of his death to furnish her *any part of the support requisite to enable her to live consistent with her position in life.*

It is unnecessary to discuss at length the cases cited by the Court of Civil Appeals in support of its holding that Mrs. Hall's uncontroverted testimony presented a fact issue as to her dependency at the time of her brother's death. The facts involved in none of the cited cases are such that the respective holdings of the courts thereon create a conflict between any of them and the holding of this court in the Arnold case or in the present case on that point. The error of the Court of Civil Appeals, as we view it, lies in the fact that it did not give controlling effect to the construction of the pertinent provisions of the Compensation Act as to what constitutes dependency within its purview under the classification of relationships specified in the second category referred to above, one of which is here involved. The clear wording of the Act in specifying such relationship (dependent brothers and sisters) restricts the claimants' rights of recovery not only to those of *dependent* claimants, but to such claimants as were dependent upon the deceased for support under the facts that existed *at the date of his death.* The Arnold case, which construes the pertinent provisions of the Act as so restricting the rights of claimants of the second category to recover, was decided subsequent to any of the cited cases. Its holding on this point overturned the opinion of the Court of Civil Appeals therein on the point involved here. See opinion (62 S. W. (2d) 609) and cases there cited in support of its holding, some of which are cited by the Court of Civil Appeals in the present case. The holding of the Arnold case on this point has not been questioned or modified, so far as we are advised. None of the holdings of the courts in the cases cited by the Court of Civil Appeals in the present case as applied to the facts upon which they were invoked, respectively, are questioned here. The

facts of the present case as we view them do not invoke those holdings inasmuch as the uncontroverted facts show Mrs. Hall was not, within the purview of the Compensation Act, a dependent of her minor brother for any part of her *support* at the time of his death. To discuss them would be beside the point and unduly prolong this opinion.

The judgment of the Court of Civil Appeals affirming that of the trial court is reversed and set aside in so far as it is in excess of an amount of funeral benefit of $250.00, as per the conditional stipulation of the parties; and to the extent of that amount the judgments below are reformed and affirmed. It is so ordered.

Opinion adopted by the Supreme Court October 11, 1944.